F I L E D
Clerk
District Court
JUN 01 2026
for the Northern Mariana Islands
By_____ JP _____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

CHANGWU RUAN,

      Petitioner,

      v.

SERGIO ALBARRAN, TODD LYONS, MARKWAYNE MULLIN, TODD BLANCHE, and ANTHONY TORRES, in their official capacities,

      Respondents.

Case No. 1:26-cv-00010

**DECISION AND ORDER
GRANTING PETITION FOR
WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Changwu Ruan's ("Ruan") petition for writ of habeas corpus, filed on May 18, 2026. (Pet., ECF No. 1.) Ruan alleges that the Respondents' failure to provide a bond hearing violates both: 1) 8 U.S.C. § 1226(a) and its implementing regulations, as he is not an "alien seeking admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A); and 2) his Fifth Amendment right to due process because of his prolonged detention. (*Id.* ¶¶ 51–66.) Accordingly, Ruan requests that the Court "[i]ssue a Writ of Habeas Corpus ordering Respondents to schedule a bond hearing before an IJ and ordering that the IJ may not summarily deny bond at such hearing[.]" (*Id.* at 10.)

The day after the petition was filed, the Court issued an order to show cause why the petition should not be granted, setting briefing deadlines and a hearing on the matter. (ECF No. 2.) Respondent Anthony Torres filed his response (ECF No. 6), as did Respondents Sergio Albarran,

1

Todd Lyons, Markwayne Mullin, and Todd Blanche (collectively, the "Federal Respondents") (US' Resp., ECF No. 7). Ruan filed his reply. (Reply, ECF No. 8.) The Federal Respondents subsequently filed three exhibits to supplement their response (ECF Nos. 9-1–9-2; 13-1), which the Court considers for the purposes of this order. On May 27, 2026, the Court held a hearing on the petition and took the matter under submission. For the following reasons, the Court now GRANTS Ruan's petition for writ of habeas corpus based on his challenge to his prolonged detention under the due process clause of the Fifth Amendment.

## I.    BACKGROUND

Ruan is a citizen of the People's Republic of China, currently detained at the Commonwealth of the Northern Mariana Islands ("CNMI") Department of Corrections under the physical custody of the Respondents. (Pet. ¶ 1.) On August 30, 2018, Ruan was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) under the CNMI-only parole program;[1] his parole was valid until September 19, 2018. (*See* Pet. ¶ 2; US' Resp. 8.) United States Immigration and Customs Enforcement detained Ruan on October 29, 2025, and he has remained in detention since—for over seven (7) months. (Pet. ¶ 3; *see* US' Resp. 9.)

---

[1] The Federal Respondents dedicate a substantial portion of their response to discussing the "exceptional" CNMI-only parole program. (*See* US' Resp. 6–8.) Specifically, the Federal Respondents argue that the program was "crafted to allow in visitors from surrounding, high-immigration-risk countries, particularly, in this instance: China, by classifying them as arriving aliens that are not subject to bond hearings." (*Id.* at 6.) The Federal Respondents further explain that the program "seeks the advantage of tourists, while eliminating incentives for the subterfuge of 'immigration tourism', by decreasing the motivation to use the CNMI-Only Parole to facilitate easy immigration into the U.S. and its communities." (*Id.*)

The Court recognizes the Federal Respondents' argument, though it is lacking in citation to legal authority. However, because the Court is granting the writ on the basis of Ruan's due process challenge, the Court determines it is unnecessary to factor in the "exceptionality" of the CNMI-only parole program; the Court sees no reason why its due process analysis should diverge from other courts considering prolonged detention claims of individuals who have been mandatorily detained.

One day after he was detained, Ruan was placed into removal proceedings upon the filing of a notice to appear ("NTA") with the immigration court. (US' Resp. 9.) The NTA charged him with being inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). (*Id.*) Around November 4, 2025, Ruan applied for release on bond through his attorney. (Pet. ¶ 6; *see* US' Resp. 9.) The immigration judge ("IJ"_ denied Ruan's request on November 17, 2025 because Ruan is an arriving alien. (US' Resp. 9.) It is the legal position of the IJ in the removal proceedings involving non-citizens on Saipan, and of the BIA, that a non-citizen who has not been admitted into the U.S. is subject to the mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A), and that an IJ has no authority to release such a non-citizen on bond. (Pet. ¶¶ 6–7.) Ruan, proceeding *pro se*, subsequently requested a second custody redetermination hearing; this request was denied on March 24, 2026 because Ruan "is an arriving alien and the immigration court lacked jurisdiction." (US' Resp. 9.)

In his removal proceedings, Ruan applied for withholding of removal and/or relief under the Convention against Torture for fear of being returned to China. (Pet. ¶ 15; US' Resp. 9.) The IJ presiding over Ruan's proceedings orally denied his relief on March 26, 2026 and ordered him removed to China. (Pet. ¶ 16.) Ruan appealed that decision to the Board of Immigration Appeals ("BIA") on April 2, 2026, and his appeal remains pending. (Pet. ¶¶ 17–18; US' Resp. 9.) As such, and as the parties confirmed during the hearing on the petition, there is no final order of removal in Ruan's immigration proceedings.

## II.   LEGAL STANDARD

The petition seeks a writ of habeas corpus. Title 28 of the United States Code § 2241 provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation

3

of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence." *L.S. v. Warden, Otay Mesa Det. Ctr.*, No. 25CV3598-LL-BJW, 2026 WL 143150, at *1 (S.D. Cal. Jan. 20, 2026) (citing *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1228, 1290 (9th Cir. 1976)).

### III.    DISCUSSION

For the reasons detailed below, the Court determines that the statutory provisions under the Immigration and Nationality Act do not preclude this Court's jurisdiction to decide Ruan's challenge to his prolonged detention, and that under the due process clause of the Fifth Amendment, he is entitled to a bond hearing at this time. Because the Court's due process analysis is unaffected by the question of whether Ruan is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) or discretionary detention under 8 U.S.C. § 1226(a), the Court assumes without deciding that Ruan was properly designated as an arriving alien and subject to mandatory detention. The Court reserves its decision on that question, in addition to the related jurisdictional issue, for another day.

**A.  The Court has jurisdiction to consider Ruan's prolonged detention claim.**

The Federal Respondents argue that as a threshold matter, Ruan's claims and requested relief are jurisdictionally barred under 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9). This Court disagrees.

**1.  Section 1252(g) does not bar jurisdiction because Ruan's prolonged detention does not "arise from" any of the three actions listed in that statutory provision.**

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to

4

commence proceedings, adjudicate cases, or execute removal orders against any alien[.]" The language of this provision does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Rather, "[t]he provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 482 (1999)). "'There are of course many . . . decisions or actions that may be part of the deportation process' not implicated by § 1252(g), 'such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order.'" *Id.* (quoting *AADC*, 525 U.S. at 482).

The Federal Respondents argue that Ruan is challenging "the government's decisions to charge him with removability and detain him, which arise from the decision and action to commence removal proceedings against him." (US' Resp. 11 (internal alterations, quotations, and citation omitted).) The Federal Respondents argue specifically that the Court should apply the reasoning of the District Court of Hawaii in *Wang v. Derr*, No. CV25-00231 JAO-RT (D. Haw. July 16, 2025). (*Id.* at 14; *see Wang*, ECF No. 9-1.) In limiting the Court's inquiry to the due process issue, the Court finds *Wang* distinguishable. In *Wang*, the petitioner had been detained on June 2, 2025, and he challenged his designation as an "arriving alien," which subjected him to mandatory detention without a bond hearing. (*Wang* 2, 5.) The *Wang* petitioner did not raise any prolonged detention claim; he filed his original petition for writ of habeas corpus the day he was arrested and detained, and filed his amended petition a few days later. (*Id.* at 4–5.) The district court issued its decision on July 16, 2025, finding that "when detention begins with the

commencement of removal proceedings, courts lack jurisdiction to review a challenge to the detention based on § 1252(g)." (*Id.* at 17.) However, *Wang* itself distinguished prolonged detention claims, explaining that "the legal challenge to the prolonged nature of . . . detention without bond [does not] 'arise from' . . . 'action taken to remove them from the United States'" under *Jennings v. Rodriguez*, 583 U.S. 281 (2019). (*Id.* at 10.) *Jennings* relies "on some intervening event or separate circumstances from the challengers' ultimate removal to conclude that the detention/arrest was reviewable—the duration of detention . . . ." (*Id.* at 19.) "No similar . . . passage of time" was present in *Wang*. (*Id.*)

Here, Petitioner Ruan's prolonged detention constitutes the kind of intervening event that allows the Court to exercise jurisdiction over his habeas petition. *See Jennings*, 583 U.S. at 292–95; *see, e.g.*, *Fu v. Borja*, Civ. Case No. 25-00048, 2026 WL 1127324, at *7–*8 (D. Guam April 27, 2026) (distinguishing *Wang v. Derr* and finding neither § 1252(b)(9) or (g) barred the court from reviewing "arriving alien" petitioners' due process challenge to their prolonged detention); *L.S.*, 2026 WL 143150, at *2 (holding § 1252(g), (b)(9), (a)(5), and (e)(2) did not limit the court's jurisdiction to review "arriving alien" petitioner's due process challenge to his prolonged detention).

### 2. Section 1252(b)(9) does not bar jurisdiction because there is no final order of removal.

Section 1252(b)(9) mandates that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order . . ." Unlike section 1252(g), section 1252(b)(9) is not a "jurisdiction-stripping statute that . . . foreclose[s] *all* judicial review of agency actions." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). "Instead, the provision[] channel[s] judicial review

6

over final orders of removal to the courts of appeals." *Id.* (internal citation omitted). "By its terms, the jurisdiction-stripping provision does not apply to federal habeas corpus petitions that do not involve final orders of removal." *Nadarajah v. Gonzalez*, 443 F.3d 1069, 1075 (9th Cir. 2006), *abrogated on other grounds by Jennings*, 528 U.S. 281 (quoting 8 U.S.C. § 1252(b)(9)); *J.E.F.M.*, 837 F.3d at 1032 (explaining the Ninth Circuit's prior holding in *Nadarajah*). "Therefore, in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court, and on appeal to [the Ninth Circuit], pursuant to 28 U.S.C. § 2241." *Nadarajah*, 443 F.3d at 1076.

Under *Jennings*, the Court has jurisdiction to review Ruan's prolonged detention claim. In *Jennings*, habeas petitioner Alejandro Rodriguez had been detained under 8 U.S.C. § 1226 for over three years before "he filed a habeas petition in the District Court for the Central District of California, alleging that he was entitled to a bond hearing to determine whether his continued detention was justified." 583 U.S. at 289–90. On the jurisdictional issue, the Supreme Court wrote:

> For present purposes, it is enough to note that [the habeas petitioners] are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined. Under these circumstances, § 1252(b)(9) does not present a jurisdictional bar.

*Id.* at 294–95.

Here, section 1252(b)(9) does not limit the Court's jurisdiction over Ruan's prolonged detention claim because there has been no final order of removal, and because the prolonged detention claim does not involve reviewing an order removal, challenging the decision to detain him in the first place or seek removal, or any part of the process by which removability will be determined. *See Nadarajah*, 443 F.3d at 1076; *Jennings*, 583 U.S. at 294–95; *see, e.g., Fu,* 2026

WL 1127324, at *7–*8; *L.S.*, 2026 WL 143150, at *2. Again, the district court's reasoning in *Wang v. Derr* is distinguishable because that case did not involve a prolonged detention claim.

### B. Ruan's continued detention without the opportunity for a bond hearing violates his Fifth Amendment right to due process.

The Due Process Clause of the Fifth Amendment states that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of the law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings[,]" *Reno v. Flores*, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem[,]" *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Supreme Court nevertheless has recognized "detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). The Ninth Circuit has noted that after recent Supreme Court decisions, "it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201 (9th Cir. 2022) (emphasis in original). The majority of district courts, however, have determined that unreasonably prolonged detention of immigration detainees under 8 U.S.C. § 1225(b) without a bond hearing violates due process. *See Banda v. McAleenan*, 385 F.Supp.3d 1099, 1117 (W.D. Wash. 2019); *Bayani v. LaRose*, No. 26-cv-0266-JES-VET, 2026 WL 194748, at *2 (S.D. Cal. Jan. 26, 2026); *Abduraimov v. Andrews*, No. 1:25-cv-00843-EPG-HC, 2025 WL 2912307, at *5 (E.D. Cal. Oct. 14, 2025); *Arechiga v. Archambeault*, No. 2:23-cv-00600-CDS-VCF, 2023 WL 5207589, at *3 (D. Nev. Aug. 11, 2023). This Court now joins the majority of district courts in finding that "prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point —violate the right to due process.'" *See Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL

5968089, at *6 (W.D. Wash. May 23, 2019) (citation omitted), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019).

The Court turns now to consider whether Ruan's detention has been unconstitutionally prolonged in violation of the due process clause. Courts in this Circuit have adopted various tests. *See Rodriguez v. Nielsen*, No.18-cv-04187- TSH, 2019 WL 7491555, *6 (N.D. Cal. Jan. 7, 2019) (applying bright-line rule that detention under 1226(c) "becomes prolonged after six months and entitles [a detainee] to a bond hearing"); *Jimenez v. Wolf*, No. 19-cv-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (applying three-factor balancing test discussed in *Mathews v. Eldridge*, 424 U.S. 319 (1976) for a § 1226(c) detainee); *Banda*, 385 F.Supp.3d at 1117 (applying six-factor test for a § 1225(b) detainee). The Court today adopts the six-factor test laid out in *Banda* for two reasons. First, a bright-line rule "is inconsistent with the fact-dependent nature of the constitutional question before the Court, namely whether petitioner's prolonged detention has become unreasonable." *Banda*, 385 F.Supp.3d at 1117. Second, the *Mathews* test "balances the benefits or burdens of '*additional* or *substitute* procedural safeguards'" and therefore "does not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided." *Id.* at 1106–07 (emphasis in original) (quoting *Mathews*, 424 at 334).

Under the multi-factor test, the Court analyzes "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Id.* at 1118 (quoting *Jamal A. v. Whitaker*, 358 F.Supp.3d 853, 8559 (D. Minn. 2019)). Because the first three factors weigh in favor of Ruan and the other three factors are neutral, the Court finds that Ruan's due process rights have been violated.

### 1. The first factor—the total length of detention—weighs in Ruan's favor.

The Court considers this "the most important factor." *See id.* at 1118 (internal citations omitted). The Ninth Circuit has acknowledged that "detentions longer than six months [are] considered 'prolonged' in cases such as this where 'no individualized bond hearings [have] taken place at all." *Tonoyan v. Andrews*, Case No. 1:25-cv-00815-SKO (HC), 2025 WL 3013684, *4 (quoting *Rodriguez Diaz*, 53 F.4th at 1207). Courts have found detention without a bond hearing for over seven months to be unreasonable. *See e.g., Cabral v. Decker*, 331 F.Supp.3d 255, 261 (S.D.N.Y. 2018) (granting a bond hearing for a § 1226(c) detainee held for over seven months); *Masood v. Barr*, No. 19-cv-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) (granting a bond hearing for a § 1225(b) detainee held "for nearly nine months"). Here, Ruan has been detained for over seven months, so this factor weighs in his favor.

### 2. The second factor—the likely duration of future detention—weighs in Ruan's favor.

Courts find that "an undetermined, but likely significant, period of mandatory detention through the appeals process" factors towards a finding in favor of habeas petitioners. *Gao v. LaRose*, 805 F.Supp.3d 1106, 1111 (S.D. Cal. 2025). Here, the IJ has already denied Ruan's application for withholding of removal and/or relief under the Convention against Torture for fear of being returned to China. Ruan appealed that decision to the BIA on April 2, 2026, and his appeal remains pending. Even after the BIA makes its decision, Ruan will be eligible to appeal that decision to the Ninth Circuit, which could "take up to two years or longer." *Banda*, 385 F.Supp.3d at 1119; *see Sanchez-Rivera v. Matuszewski*, No. 22-cv-1357-MMA, 2023 WL 139801, *6 (S.D. Cal. Jan. 9, 2023) (finding that an appeal to the Ninth Circuit would be sufficiently lengthy such that this factor weighs in favor of petitioner); *Hong v. Mayorkas*, Case No. 20-CV-01784-LK, 2022

WL 1078627, *7 ("[A]ppeals pend in the Ninth Circuit for 12 to 20 months before oral argument, and then an additional three months to a year after oral argument before a decision is issued."). This "undetermined, but likely significant" delay through the appeals process weighs in Ruan's favor.

### 3. The third factor—the conditions of detention—weighs in Ruan's favor.

In analyzing this factor, the Court considers whether the conditions of Ruan's confinement "resemble penal confinement." *See Banda*, 385 F.Supp.3d at 1119 (quoting *Jamal*, 358 F.Supp.3d at 860). The more a habeas petitioner's confinement resembles penal confinement, the "stronger his argument" is. *Id.* Ruan is being held at the CNMI Department of Corrections, "in the same section as male criminal defendants who are serving their sentences and those who have pending criminal cases." (Pet. ¶ 63.) "The condition of his detention is exactly the same as penal confinement." (*Id.* ¶ 62.) Accordingly, this factor weighs in Ruan's favor.

### 4. The fourth and fifth factors—whether Ruan or the Respondents have caused undue delays in the removal proceedings—are neutral.

Courts note that "a petitioner's pursuit of defenses to removal should not be held against a determination that they are entitled to due process." *Bayani*, 2026 WL 194748, *3 (citing *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F.Supp.3d 959, 965 (D. Minn. 2019)). Neither party has alleged any undue delays; thus the Court finds that these factors are neutral.

### 5. Lastly, the sixth factor—the likelihood that the removal proceedings will result in a final order of removal—is neutral.

Ruan's application for withholding of removal and/or relief under the Convention Against Torture based on his fear of being returned to China has been denied, but he has appealed that decision to the BIA. Here, like in *Banda*, there is insufficient information to determine whether

Ruan has a strong case on appeal. *See Banda*, 385 F.Supp.3d at 1120. As such, this factor is neutral. *See id.*

In sum, three of the six factors weigh in favor of granting Ruan a bond hearing, and three factors are neutral. The Court thus concludes that Ruan's continued mandatory detention has become unreasonable and that due process requires the Government to provide his with a bond hearing.

## IV.   CONCLUSION

Based on the foregoing, the Court GRANTS Ruan's petition for writ of habeas corpus under 28 U.S.C. § 2241 for an individualized bond hearing before an immigration judge. Within fourteen (14) days of this order, Respondents are directed to arrange an individualized bond hearing before a neutral immigration judge in which the Government bears the burden of establishing by clear and convincing evidence that Ruan is a danger to the community or a flight risk if released. If no hearing occurs within fourteen days of this order, Ruan shall be released from Respondents' custody.

The Court further ORDERS Respondents to file a status report by **June 22, 2026**.

IT IS SO ORDERED this 1st day of June, 2026.

_____
RAMONA V. MANGLONA
Chief Judge